**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HARRY BIRCH,**

                        **Plaintiff,**

          **v.**

**WHITE WAY LAUNDRY,**
**INC. et al.,**

                    **Defendants.**
_____

**WHITE WAY LAUNDRY,**
**INC. et al.,**

         **Third-Party Plaintiffs,**

          **v.**

**H.O. PENN MACHINERY**
**COMPANY, INC.,**

         **Third-Party Defendant.**
_____

|  |  |
|---|---|
| **1:19-cv-1560** | |
| **(GLS/DJS)** | |

|  |  |
|---|---|
| **1:19-cv-1560** | |
| **(GLS/DJS)** | |

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Basch, Keegan Law Firm | DEREK J. SPADA, ESQ. |
| 307 Clinton Avenue | |
| Kingston, NY 12402 | |
| | |
| **FOR THE DEFENDANTS/** | |
| **THIRD-PARTY PLAINTIFFS:** | |
| Office of Theresa Puleo | MURRY S. BROWER, ESQ. |
| One Park Place | |
| Albany, NY 12205 | |

**FOR THE THIRD-PARTY
DEFENDANT:**
Mound, Cotton Law Firm                  STEVEN TORRINI, ESQ.
30A Vreeland Road, Suite 210
Florham Park, NJ 07932

**Gary L. Sharpe
Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Harry Birch commenced this negligence action against defendants White Way Laundry, Inc. and White Way Uniform Services (collectively, hereinafter "White Way") in the New York State Supreme Court in Ulster County. (Compl., Dkt. No. 2.) White Way subsequently removed the action to this District on the basis of diversity jurisdiction, (Dkt. No. 1), and, shortly thereafter, commenced a third-party action against third-party defendant H.O. Penn Machinery Company, Inc. for indemnification and defense costs, (Dkt. No. 23). Now pending are White Way's motion for summary judgment against Birch and Penn's motion for summary judgment against White Way. (Dkt. Nos. 30, 31.) For the reasons that follow, White Way's motion is granted, and Penn's motion is denied as moot.

2

## II.  Background

**A.    Facts**[1]

*1.    White Way's Motion for Summary Judgment Against Birch*[2]

Birch had been working as a mechanic for Penn in its Bloomingburg office for fourteen years prior to the incident that gave rise to this litigation. (White Way's Statement of Material Facts (SMF) ¶¶ 11, 15, 22, Dkt. No. 31, Attach. 1; Dkt. No. 34, Attach. 1 ¶ 2.)  Penn had a locker room where Birch changed into his work uniform each morning and left his used uniform before leaving each day.  (Dkt. No. 34, Attach. 1  ¶¶ 3-4, 17.)  The locker room would often become congested.  (*Id.* ¶ 18.)

On a weekly basis, White Way supplied clean uniforms to Penn and picked up the used ones for cleaning.  (White Way's SMF ¶ 16; Dkt. No. 34, Attach. 1 ¶ 5, 20.)  Timothy McDermott was the White Way

---

[1]  Unless noted otherwise, the facts are undisputed.

[2]  Birch's opposition to White Way's motion for summary judgment fails to comply with Local Rule 56.1.  (*See generally* Dkt. No. 34.)  According to the Local Rules of this District, the party opposing a summary judgment motion must file a separate response to the statement of material facts, and that response "shall mirror the movant's [s]tatement of [m]aterial [f]acts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs."  N.D.N.Y. L.R. 56.1(b).  If the opposing party fails to do so, as Birch did here, "[t]he [c]ourt may deem admitted any properly supported facts set forth in the [s]tatement of [m]aterial [f]acts that the opposing party does not specifically controvert."  *Id.* Accordingly, the court deems admitted White Way's statement of material facts, which are properly supported and unopposed.  Additionally, Birch proffered additional facts in its response to White Way's motion for summary judgment, (Dkt. No. 34, Attach. 1), which are also unopposed, (*see generally* Dkt. No. 35).

customer service representative who serviced Penn at all relevant times. (Dkt. No. 34, Attach. 1 ¶ 24.)  The clean uniforms that White Way brought to Penn were on hangers, and, when an employee took a clean uniform, these hangers were placed on a hanger rack.  (*Id.* ¶ 3.)  The hanger rack would fill up and then be emptied by White Way approximately once per month.  (White Way's SMF ¶¶ 6-7; Dkt. No. 34, Attach. 1 ¶¶ 14, 28-29.) Birch asserts that the hanger rack was placed in a "narrow area" of the locker room and caused a "trip hazard."  (Dkt. No. 34, Attach. 1 ¶¶ 7-8, 22-23.)  He further asserts that the rack "would often become overloaded with hangers" and they "were usually in total disarray."  (*Id.* ¶ 21.)  White Way was responsible for the hanger rack, (*id.*), but its location in the locker room was determined by Penn, (White Way's SMF ¶¶ 1, 19).

On the morning of November 3, 2018, as Birch walked through the locker room and rounded a corner, he tried to walk past the hanger rack, but his foot made contact with "either the rack or a hanger," causing him to lose his balance, trip, and fall on a wooden bench.  (Dkt. No. 34, Attach. 1 ¶ 9.)  Birch is not sure whether his foot hit a hanger or the rack itself. (White Way's SMF ¶ 14; Dkt. No. 34, Attach. 1 ¶ 9.)  Due to this fall, he sustained "a severe injury" to his shoulder that required surgery.  (Dkt. No.

34, Attach. 1 ¶ 15.)

White Way asserts that it received no complaints about the location of the hanger rack, but Birch contends that he complained to McDermott and to his foreman at Penn.  (White Way's SMF ¶¶ 4, 9; Dkt. No. 34, Attach. 1 ¶ 13.)  In any case, the rack was placed in the same position in the locker room since 2007, eleven years before Birch's fall.  (White Way's SMF ¶¶ 2, 12; Dkt. No. 34, Attach. 1 ¶ 31.)  And, aside from the incident in question, Birch has never made contact with it during his tenure at Penn. (White Way's SMF ¶ 15.)

   2.   *Penn's Motion for Summary Judgment Against White Way*[3]

White Way maintains, and White Way agrees, that the hanger rack "was placed in the same location since . . . 2007," and that, prior to the incident in question, "no individual, including [Birch], made any complaints about the location of the hanger rack[,] nor did [Birch] ever complain that the rack was over-filled."  (Penn's SMF ¶¶ 20, 24, Dkt. No. 30, Attach. 12.)

In February 2017, White Way and Penn entered into a rental services

─────────────────

   [3]  Penn includes many of the same facts in its statement of material facts as those included in White Way's and Birch's submissions and noted above.  (*See generally* Dkt. No. 30, Attach. 12.)  However, this sub-section focuses on additional facts proffered by Penn that are germane to its motion for summary judgment against White Way.

agreement (hereinafter "the Agreement"), whereby White Way agreed to supply garments to Penn.  (*Id.* ¶ 25.)  The Agreement contains two provisions related to indemnification: (1) "[Penn] acknowledges that the garments/items described herein offer no protection from molten metal, sparks, flames or caustic chemical.  [Penn] agrees to indemnify and hold [White Way] harmless from any claims arising out of or associated with the use of the product, including any claims allegedly arising from defects" and (2) "[Penn] agrees to 'indemnify and/or hold harmless' [White Way] from and against any and all losses, claims, demand and injury to [Penn] and any other person or property arising from use of items.  [White Way] assumes no responsibility for items serviced once they are in [Penn's] possession."  (*Id.* ¶ 29.)

The Agreement does not define the terms "garments" or "items," and does not mention the terms "hanger" or "hanger rack."  (*Id.* ¶¶ 30-32.) Penn asserts that the Agreement does not specifically require it to indemnify White Way for claims involving the hanger rack or the storage of hangers.  (*Id.* ¶¶ 33-34.)  White Way disagrees, contending that the hangers and rack were "items supplied by White Way," and, thus, covered by the indemnity language, and that the indemnity provisions "simply cover

whatever White Way supplies to . . . Penn." (Dkt. No. 32, Attach. 2 ¶¶ 33-34.) White Way further asserts that Scott Green, a Penn service manager, (Penn's SMF ¶ 21), did not read the Agreement or have it reviewed by anyone before signing it, and that he "accepted the terms of the [Agreement] without any intent beyond agreeing to whatever was contained in [it] as written." (Dkt. No. 32, Attach. 2 ¶¶ 35-36, 38.)

**B.   Procedural History**

Birch commenced this action on October 28, 2019, alleging two negligence claims against White Way. (Compl.) White Way then commenced the third-party action against Penn for indemnity and defense costs. (Dkt. No. 23.) White Way now moves for summary judgment against Birch, (Dkt. No. 31), and Penn moves for summary judgment against White Way, (Dkt. No. 30).

**III.   Standard of Review**

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

**A.    White Way's Motion**

White Way argues that it is entitled to summary judgment as to Birch's claims because it did not owe him a duty of care.  (Dkt. No. 31, Attach. 2 at 4-9.)

Under New York law, "[i]n order to set forth a prima facie case of negligence, the plaintiff's evidence must establish (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) that such breach was a substantial cause of the resulting injury."  *In re Lake George Tort Claims*, 461 F. App'x 39, 40 (2d Cir. 2012) (quoting *Merino v. N.Y.C. Transit Auth.*, 218 A.D.2d 451, 457 (3d Dep't 1996)). "Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party."  *Espinal v. Melville Snow Contractors Inc.*, 98 N.Y.2d 136, 138 (2002) (citations omitted).  "The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the courts."  *Sanchez v. State of New York*, 99 N.Y.2d 247, 252 (2002) (citation omitted).

White Way argues, as a threshold matter, that Birch cannot establish

8

a duty because it did not control the placement of the hanger rack or the

numbers of hangers on the rack, and it did not own the property in which

Birch was injured.  (Dkt. No. 31, Attach. 2 at 4-9.)  Because Birch was not

a White Way employee, and White Way neither owned nor leased the

property in which Birch was injured, to the extent that any duty of care was

owed, the duty would have to stem from White Way's contract with Birch's

employer, Penn.  *See Connolly v. Chemtreat, Inc.*, No. 14-CV-2121, 2016

WL 126379, at *4 (E.D.N.Y. Jan. 11, 2016) (noting that there was no

general duty owed to the plaintiff because he was not an employee or

contractor of the defendant and the defendant did not own or operate the

place where plaintiff was injured, and, thus, finding that "if [the defendant]

owed [the plaintiff] any duty, it must arise from [the defendant's] contract

with [the plaintiff's employer] or other special circumstances").

     "[A] contractor generally does not owe an independent tort duty of

care to a non-contracting third party."  *Guzman v. Wackenhut Corp.*, 394.

F. App'x 801, 803 (2d Cir. 2010) (citing *Espinal*, 98 N.Y.2d at 138-39).

However, as established in *Espinal*, there are certain exceptions under

which a duty of care to a non-contracting third party may arise out of a

contractual obligation.  *See Espinal*, 98 N.Y.2d at 140.  The exception that

9

Birch relies on here, (Dkt. No. 34, Attach. 2 at 6), is "where the contracting party, in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm," *Espinal*, 98 N.Y.2d at 140 (internal quotation marks and citation omitted).  New York courts have interpreted this exception to mean that a defendant, who "undertakes to render services and then negligently creates or exacerbates a dangerous condition may be liable for any resulting injury." *Id.* at 141-42 (citation omitted).  Such a creation or exacerbation of a dangerous condition occurs "where the promisor, while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk." *Church v. Callanan Indus., Inc.*, 99 N.Y.2d 104, 111 (2002) (citation omitted).

Here, White Way argues that there is no evidence demonstrating that it created, or took an affirmative act to exacerbate, a dangerous condition involving the location or fullness of the hanger rack  (Dkt. No. 31, Attach. 2 at 5-9.)  White Way asserts that "[t]he rack had been in the same place for nearly [eleven] years," and that the "hangers were placed on the rack by . . . Penn employees." (*Id.* at 6.)  In response, Birch contends that White Way placed the hanger rack in the position it was in at the time of Birch's fall,

that the rack was only emptied about once per month, causing it to overflow, and, thus, that there are issues of fact with respect to whether the location and condition of the hanger rack constituted an instrument of harm.  (Dkt. No. 34, Attach. 2 at 6-8.)

White Way has satisfied its initial burden of showing that there is no genuine dispute as to any material fact, and that it is entitled to judgment as a matter of law.  *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 115 (2d Cir. 2017) ("[W]hen a defendant moves for summary judgment, it is the defendant who must show entitlement to judgment." (emphasis omitted)).  Indeed, it is undisputed that White Way did not own or lease the premises where the accident occurred, and it has set forth additional, supported and unopposed facts establishing that it did not control the hanger rack or its location, that the placement of the rack was at Penn's discretion, and that the rack had been in the same position in the locker room since 2007.  (White Way's SMF ¶¶ 1-3, 12.)

The burden therefore shifts to Birch to offer evidence establishing a genuine issue of material fact, *see Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006), and he has simply not done so.  For example, Birch relies on case law in conjunction with bare assertions that such case law is

analogous to the instant case in order to show that White Way launched an instrument of harm.  (Dkt. No. 34, Attach. 2 at 6-8.)  However, as argued by White Way, (Dkt No. 31, Attach. 2 at 2-3), the cases to which Birch cites involve hazards located in stores or other buildings owned by the defendant, or are cited merely for the general rule that, under certain circumstances, a duty of care to a non-contracting third party may arise out of a contractual obligation.  (Dkt. No. 34, Attach. 2 at 3-8.)

These cases do not support Birch's assertion that a duty may be owed by a contractor, like White Way, to a non-contracting third party, like Birch, for injuries sustained by an object that is controlled by, and located in premises owned by, his employer.  Accordingly, they are not pertinent.

Additionally, any allegation that White Way was aware of the allegedly poor condition of the hanger rack and failed to remedy it is insufficient to create a genuine issue of material fact, to the extent that Birch argues otherwise.  *See Church*, 99 N.Y.2d at 112 (noting that an alleged omission or inaction is insufficient to find that a defendant launched an instrument of harm "where inaction is at most a refusal to become an instrument for good"); *Braverman v. Bendiner & Schlesinger. Inc.*, 121 A.D.3d 353, 360-61 (2d Dep't 2014) (holding that a mere omission or the

12

failure to make something safer is not a launching of a force or instrument of harm); *Fairclough v. All Serv. Equip. Corp.*, 50 A.D.3d 576, 578 (1st Dep't 2008) (holding that a defendant's failure to detect and replace a broken iron gate covering a stove burner during a contractually mandated inspection did not launch a force or instrument of harm).

In sum, on the facts and evidence before the court, it cannot be said that White Way launched an instrument of harm so as to establish a duty owed by it to Birch.  Accordingly, because Birch cannot establish the duty element of his negligence claims, White Way's motion for summary judgment is granted, and the complaint is dismissed.  *See In re Lake George*, 461 F. App'x at 40-41 (holding that the defendant did not launch a force or instrument of harm when it built a canopy that proved to be unsafe or when it failed to conduct or recommend a "stability test"); *Dung Nguyen v. Morrison Healthcare*, 412 F. Supp. 3d 196, 202-03 (E.D.N.Y. 2018) (granting the defendant's motion for summary judgment with respect to a negligence claim brought by the plaintiff, a non-contracting third party, and holding that the defendant did not launch an instrument of harm because, among other reasons, the defendant did not own or lease the property where the plaintiff was injured, the plaintiff's employer controlled the

13

location of the alleged hazard, and "the fact that [d]efendant was responsible for cleaning the area, without more, is insufficient to create a reasonable inference [that it] created or exacerbated [a] dangerous condition").

## B.   **Penn's Motion**

Penn moves for summary judgment against White Way, arguing that it is not required to indemnify White Way as to Birch's claims because the indemnity provisions in the Agreement, upon which White Way relies, are vague and ambiguous, and, thus, unenforceable.  (Dkt. No. 30, Attach. 13 at 8-15.)  A review of White Way's amended third-party complaint and its response to Penn's motion for summary judgment makes clear that its third-party complaint depends on the success of Birch's claims.  (Dkt. No. 23 ¶ 10 ("To the extent that [White Way] is held liable to [Birch] and to the extent that it incurs legal expenses, [Penn] owes full and complete indemnity to [White Way]."); Dkt. No. 32, Attach. 3 at 5 (arguing that Penn must "defend and indemnify White Way . . . for all of the claims made by . . . Birch in this case").)

As such, because Birch's claims are dismissed by this Memorandum-Decision and Order, the amended third-party complaint is dismissed as

14

well.  *See David r. Maltz & Co. v. Wachovia Bank, N.A.*, No. CV 07-1049, 2010 WL 1286308, at *12 (E.D.N.Y. Mar. 31, 2010) ("The claims against [the third-party plaintiff] in the main action having been dismissed in their entirety, the third party complaint shall be dismissed as well."). Accordingly, Penn's motion for summary judgment against White Way is denied as moot.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that White Way's motion for summary judgment (Dkt. No. 31) is **GRANTED**; and it is further

**ORDERED** that Birch's complaint (Dkt. No. 2) is **DISMISSED**; and it is further

**ORDERED** that White Way's amended third-party complaint (Dkt. No. 23) is **DISMISSED**; and it is further

**ORDERED** that Penn's motion for summary judgment (Dkt. No. 30) is **DENIED as moot**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

15

**IT IS SO ORDERED.**

September 21, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge